# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01552-STV

BOULDER BIOMED, LLC,

    Plaintiff,

v.

ISCREEN, INC.,

    Defendant.

_____

# ORDER
_____

Chief Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (the "Motion"). [#56] The Motion is before the Court on the parties' consent to have a United States magistrate judge conduct all proceedings in this action and to order the entry of a final judgment. [##31, 32] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion [#56] is **GRANTED**.

I.   **FACTUAL BACKGROUND**[1]

Plaintiff Boulder Biomed, LLC ("Biomed") is an expert contract consulting firm that provides services to life science companies including, among other things, manufacturing, repair and design services.  [#68 at SOF2]  Defendant iScreen, Inc. ("iScreen") sells and leases a pediatric vision screening device.  [*Id.*, SOF3]  On January 12, 2022, the parties entered into a Master Services Agreement ("MSA"), which provided that whenever iScreen sought one or more services from Biomed, the parties would separately execute a Statement of Work ("SOW").  [*Id.*, SOF5, SOF7; *see also* #57-2 at 2]  Each SOW would "describe the nature of each assignment, the scope of Services, the items to be delivered to [iScreen] . . . billing rates, start and end dates, delivery and performance schedules, fees, payment schedules and any requirements and assumptions specific to the assignment."  [#68 at SOF7]  The parties entered into two SOWs, the Design SOW and the Repairs SOW.  [*Id.*, SOF11]  This action concerns the Repairs SOW, which was incorporated into the MSA.  [*Id.*, SOF11, SOF33; *see also* #57-12 at 10-11 (state court determination that the MSA applied to the Repairs SOW)[2]]

---

[1] The undisputed facts are drawn from the Separate Statement of Facts filed with the reply brief in support of the Motion.  [#68]  The Court refers to the sequentially numbered facts set forth in the Separate Statement of Facts as "SOF#".  The Court periodically cites directly to the exhibits cited by the parties to provide additional context.  Disputed facts are identified as such.

[2] iScreen denies that the MSA applies to the Repairs SOW [#68 at SOF6], but the Court takes judicial notice of the state court ruling attached to the Plaintiff's Motion as exhibit K [#57-12].  *Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (quoting *St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979))); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (federal courts may take judicial notice of a public record from another court concerning matters that bear directly on the disposition of the case at hand); *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the

In 2022, Enercon, the servicer for iScreen's Vision 3000 devices, informed iScreen that it would no longer service or repair its devices. [#68 at SOF12; *see also* #8 at 6-7, ¶¶ 6] Enercon had been charging iScreen a flat fee for servicing and repairs. [#68 at SOF13] The parties began having discussions about Biomed becoming the new device servicer. [*Id.*, SOF14] As part of those discussions, representatives from both parties visited Enercon. [*Id.*, SOF15]

After the visit, Biomed submitted a proposal to service iScreen's devices. [*Id.*, SOF17; #57-3] The proposal stated that all costs are "estimates" and that Biomed "bills on a time and material basis." [##68 at SOF18; 57-3 at 7] The proposal further stated that "[t]he servicing at the beginning will be completed by an engineer and then transferred to a technician at a lower rate. The engineering rate is $150 and the technician rate is $85." [*Id.*] The proposal contained initial and on-going hourly estimates for simple, moderate, and challenging repairs. [##68 at SOF19; 57-3 at 7-8]

iScreen was surprised at the proposal based on its experience with Enercron. [#68 at SOF20] iScreen told Biomed that its initial hourly estimates incorrectly contemplated that Biomed would spend most of its time on moderate and challenging repairs, as opposed to simple repairs, but that, in practice, most repairs were not complex, and could all be completed within an hour. [*Id.*, SOF21] In the communications about this proposal, Francis C. "Buck" Brown, iScreen's CEO, said that iScreen needed the cost to repair a device to be around $170 or to be done within an hour or two hours. [*Id.*, SOF4, SOF23]

---

underlying proceedings."). And "[i]ssue preclusion, or collateral estoppel, . . . prevents parties or their privies from relitigating particular issues that have been contested and resolved." *Peerless Indem. Ins. Co. v. Brennan*, No. 4:19-CV-00101-DN-PK, 2021 WL 3055844, at *4 (D. Utah July 20, 2021).

Mr. Brown testified that he recalled James Kasic, Biomed's CEO, saying "he saw no reason that we couldn't ultimately get to that number," after a ramp up period.[3] [*Id*., SOF24; #57-6 at 112:16-113:25, 118:11-120:15 (Francis C. Brown's deposition)]

On September 2, 2022, Biomed submitted an updated servicing proposal. [#68 at SOF26] Based on a prior conversation in which iScreen and Enercon told Biomed that most repairs would be simple, the initial hourly estimates were removed from the proposal. [*Id*., SOF27] That section was replaced with a statement that Biomed "estimates that it will take 1 to 2 months of repairs to transition from an engineer to a technician depending on the type of repair." [*Id*., SOF28]

On October 3, 2022, the parties entered into the Repairs SOW. [*Id*., SOF32] The Repairs SOW provides that it "supersedes and merges all prior or contemporaneous communications and understandings between the parties regarding Such Services." [*Id*., SOF36] The Repairs SOW further provides that "[a]ll costs are estimates" and Biomed "bills on a time and materials basis." [*Id*., SOF37]

On May 1, 2023, Biomed terminated the parties' contract.[4] Plaintiff initiated this action on June 20, 2023, asserting three claims for relief: (1) breach of contract,

---

[3] Defendant disputes "the ramp up period comment as it was not made within the same quote." [#68 at 9] However, upon review of the deposition testimony, Mr. Brown did state, consistent with SOF24, that Biomed contemplated a ramp up period during these discussions. [#57-6 at 112:16-113:25, 118:11-120:15 ("Q. Okay. And part of that was to say [Biomed] told you at first it's going to be the engineer at the higher rate. A. Yes. Q. And then it will transition over time to the technician at the lower rate? A. Yeah. . . . Q. And that was to allow [Biomed] to essentially ramp up . . . .A. Yes. I would say that's accurate, yes.")]

[4] This fact does not appear in the separate statement of facts but both parties represent in their Motions that it is undisputed that Plaintiff terminated the parties' contract [##56 at 5; 64 at 2], and that fact is also listed as undisputed in the Scheduling Order [#21 at 6]. The Court therefore treats this as an undisputed fact.

promissory estoppel, and unjust enrichment. [#1]  On September 5, 2023, Defendant filed its Answer and Counterclaims, asserting three claims for relief: (1) breach of contract for the Repairs SOW, (2) breach of contract for the MSA, and (3) negligent misrepresentation. [#8]  On February 28, 2025, Plaintiff filed the instant Motion seeking summary judgment on Defendant's negligent misrepresentation claim. [#56]  A response and a reply have been filed. [##64, 67]  On April 28, 2025, Plaintiff also filed a Notice of Supplemental Authority in Support of its Motion for Partial Summary Judgment. [#71]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact, which the movant may do "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim" when the movant does not bear the burden of persuasion at trial.  *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  If the moving party bears the burden of proof at trial, "the moving party must establish, as a matter of law, all essential elements of the [claim or affirmative defense on which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict."  *Rodell v. Objective Interface Sys., Inc.*, No.

14-CV-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331). If the movant carries its initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial." *Adler*, 144 F.3d at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment must be based on more than mere speculation, conjecture, or surmise. *Bones v. Honeywell Int'l Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III.     ANALYSIS

Plaintiff's Motion seeks a determination that Defendant's counterclaim for negligent misrepresentation fails because: (1) Biomed's alleged statement, that it could perform repair services at a comparable cost to the prior servicer, is not a representation of an existing fact; (2) the Repairs SOW contains an integration clause, which contradicts the alleged misrepresentation; and (3) the claim is barred by the economic loss rule. [#56] Because the Court agrees that the alleged statements are not representations of an existing fact, the Court does not address the alternative arguments in support of summary judgment.

"To state a claim for negligent misrepresentation under Colorado law, a plaintiff must allege: (1) the defendant, in the course of his or her business, profession or employment; (2) made a misrepresentation of material fact, without exercising reasonable care; (3) for the guidance of others in a business transaction; (4) with knowledge that the plaintiff would rely on his or her representation; and (5) the plaintiff justifiably relied on the misrepresentation to his or her detriment." *Templeton v. Catlin Spec. Ins. Co.*, 612 F. App'x 940, 953 (10th Cir. 2015) (citing *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011)). "A claim for negligent misrepresentation applies only if there has been a misrepresentation of an existing fact. Such claim cannot be based solely on the nonperformance of a promise to do something at a future time." *Branscum v. American Community Mut. Ins. Co.*, 984 P.2d 675, 680 (Colo. App. 1999); *see also, e.g.*, *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.*, 892 P.2d 230, 237 (Colo. 1995) ("In a claim for negligent misrepresentation, the misrepresentation must be of a material fact that presently exists or has existed in the past."). A promise relating to future events

7

"without a present intent not to fulfill the promise is not actionable." *Van Leeuwan v. Nuzzi*, 810 F.Supp. 1120, 1124 (D.Colo.1993). Similarly, an expression of professional opinion is not sufficient to support a cognizable claim of negligent misrepresentation. *Mehaffy*, 892 P.2d at 237; *Leece v. Griffin*, 371 P.2d 264, 265 (Colo.1962) (holding that defendant's estimate of future income from property was not a representation of fact because it was an expression of opinion as to the happening or non-happening of a future event).

The question here is whether James Kasic's statement to Francis Brown—that it could meet iScreen's budgetary constraints—was merely a prediction about future events or an opinion on anticipated costs (neither of which would support a negligent misrepresentation claim), or whether it was a representation of an existing fact. The pertinent portion of Mr. Brown's deposition testimony is as follows:

> Q.   Okay.  And what did you tell the larger  group -- Well, did you tell the larger group that  you had any concerns or  suggested revisions to the proposal?
>
> A.   I did.  I told them that I had quite a  bit of concern around the proposed costs for moderate and challenging repairs specifically; that those were not economically feasible for iScreen, and that they were substantially more than we were being charged by Enercon. And it was -- it was in that phone call that we did go through some of the economics of – we had previously gone through some of the economics of iScreen during the -- during the development project, but where we sort of reminded Jim and Peggy of the economics of iScreen and that, you know, we -- we -- a thousand dollars, for example, even -- or for, in the worst-case scenario here, $2,400, that -- that that was more than it cost to build a new device, that was way more than the average revenue of a customer in a year, and those kinds of numbers were just not feasible for us. And we -- again, whether we specifically  shared exactly what Enercon was charging us, or said  the simple repair was sort of what -- more – the simple repair, in terms of ongoing, of 170 was more representative of what we were being charged for Enercon, it was related to Jim and Peggy on that phone call that -- that unless the number could be down around that $170, that it -- this wasn't

feasible for us. And I -- and **I do specifically recall Mr. Kasic saying he saw no reason that we couldn't ultimately get to that kind of a number**.

[#57-6 at 112:16-113:25 (emphasis added)][5]  The Court finds Mr. Kasic's representation is nothing more than a professional opinion regarding future performance, rather than a representation of a fact.  Ultimately, Mr. Kasic indicated that, in the future, as Biomed gained more experience repairing the devices, the work might be transitioned to a lower-billable-rate employee and the pricing "could be down around" $170.  [*Id.* at 113:19-25] The parties' agreement contemplated a ramp-up period, which made it impossible to establish a precise price at the outset.  [##57-5 at 8 ("The servicing at the beginning will be completed by an engineer and then transferred to a technician at a lower hourly rate. . . . [Biomed] estimates that it will take 1-2 months of repairs to transition from an engineer to a technician depending on the type of repair."); 57-6 at 112:16-113:25, 118:11-120:15] This transition period and the associated pricing estimates were incorporated into the Repairs SOW.  [*Id.*]  Had the parties intended for the time frame and price to be binding, the language of the Repair SOW could have reflected that intention.  For example, the Repair SOW could have stated that, after two months, all work must be completed within one hour, at a technician's billable rate.  It did not.  Instead it says: "[a]ll costs are estimates" and Biomed "bills on a time and materials basis."  [#68 at SOF37]; s*ee Colo. Pool Sys. v. Scottsdale Ins. Co.*, 317 P.3d 1262, 1272 (Colo. App. 2012) (negligent misrepresentation claim fails when alleged oral misrepresentation contradicts the express

---

[5] iScreen directs the Court to additional excerpts of testimony. [#64 at 3-5 (citing  57-6 at 105:23-106:2,  112:16-113:25,  118:11-119:12,  131:18-132:14)]   But these excerpts merely demonstrate that iScreen expressed its desire to reach Enercon's prior pricing model and Biomed expressed its belief that it could reach lower repair costs in the future. iScreen does not identify a single misrepresentation of existing fact.

9

terms of the contract).  Thus, the Court concludes that the statements suggesting that Biomed could meet iScreen's budgetary constraints after a ramp up period were not an express representation of Biomed's present or past capabilities, but an opinion or prediction of what could be accomplished in the future.  And, as previously stated, neither a promise concerning future events—absent a present intent not to perform—nor a professional opinion is actionable.  *Duffield v. MPC Pipelines Inc.*, No. 17-cv-00115-MSK-STV, 2017 WL 7311884, at *4 (D. Colo. Apr. 28, 2017); *Byrum v. Wells Fargo Bank, N.A.*, No. 14-cv-00227-RBJ, 2015 WL 4575084, at *5 (D. Colo. July 30, 2015); *Lariviere, Grubman & Payne, LLP v. Phillips*, No. 07-cv-01723-WYD-CBS, 2011 WL 650001, at *17 (D. Colo. Feb. 11, 2011); *Pappas v. Frank Azar & Assocs., P.C.*, No. 06-cv-01024-MSK-BNB, 2007 WL 2683549, at *7 (D. Colo. Sept. 7, 2007); *Van Leeuwan*, 810 F. Supp. at 1124; *Mehaffy,* 892 P.2d at 237.

iScreen argues that at the time Mr. Kasic made those statements, he lacked the intent to meet iScreen's budgetary constraints.  [#64 at 4]  But the evidence iScreen cites—deposition testimony demonstrating how crucial comparable servicing pricing was to iScreen [#57-6 at 105:23-106:2, 112:16-113:25, 118:11-119:12, 131:18-132:14], a spreadsheet showing invoices [#64-1], a proposal to service the devices [#64-2], and emails between iScreen and Biomed after the Repairs SOW was signed expressing iScreen's frustration with the costs incurred [##64-3; 64-4; 64-5]—do not show Biomed did not intend to fulfill a promise.  Thus, because iScreen has not created a genuine issue of material fact demonstrating that Biomed did not intend to meet iScreen's budgetary constraints when Biomed made its representations about its ability to meet those

10

constraints, Biomed is entitled to summary judgment on iScreen's negligent misrepresentation claim.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment [#56] is **GRANTED.**

DATED:  August 10, 2025                                   BY THE COURT:

s/Scott T. Varholak  
Chief United States Magistrate Judge
